# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## PINE BLUFF DIVISION

| | |
|---|---|
| MARK HENDERSON, | * |
| ADC #78763 | * |
| | * |
|       Plaintiff, | * |
| v. | * |
| | *   No. 5:10-cv-00221-SWW-JJV |
| RAY HOBBS, Director, Arkansas | * |
| Department of Correction; *et al.,* | * |
| | * |
|       Defendants. | * |

## **PROPOSED FINDINGS AND RECOMMENDATIONS**

## **INSTRUCTIONS**

The following recommended disposition has been sent to United States District Judge Susan Webber Wright. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

    1.    Why the record made before the Magistrate Judge is inadequate.

    2.    Why the evidence proffered at the hearing (if such a hearing is granted) was not

offered at the hearing before the Magistrate Judge.

3.   The details of any testimony desired to be introduced at the new hearing in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing.  Mail your objections and "Statement of Necessity" to:

>  Clerk, United States District Court
>  Eastern District of Arkansas
>  600 West Capitol Avenue, Suite A149
>  Little Rock, AR 72201-3325

## **DISPOSITION**

### I.   INTRODUCTION

This matter is before the Court on the Defendants' Motion for Summary Judgment (Doc. No. 75).  Plaintiff filed a Response and a Corrected Response to the Motion (Doc. Nos. 79, 82).

Plaintiff, Mark Henderson, is a state inmate incarcerated at the Maximum Security Unit (MSU) of the Arkansas Department of Correction (ADC).  He filed this *pro se* action pursuant to 42 U.S.C. § 1983 against Defendants, alleging unconstitutional conditions of confinement and unconstitutional retaliation.  The remaining Defendants in this action are MSU Warden William Straughn, MSU Assistant Warden Steve Outlaw, MSU Maintenance Supervisor Terry Murphy, and former MSU Warden David White.  Plaintiff asks for monetary and injunctive relief.

In his Complaint, Plaintiff states since he was transferred to the MSU in October 2007, he has been incarcerated in several different barracks and cells, and has been continuously exposed to gaseous fumes and human waste due to a faulty plumbing system.  (Doc. No. 2 at 5-6).  Plaintiff claims these conditions subject him to toxic fumes which aggravate his asthma and cause digestive

problems, and the unclean conditions interfere with the practice of his Islam faith. (Doc. No. 2 at 6).  Finally, Plaintiff claims Defendant White retaliated against him for filing a grievance, by placing him in administrative segregation for a year. (Doc. No. 2 at 7).

## II.    SUMMARY JUDGMENT

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *Dulany v. Carnahan,* 132 F.3d 1234, 1237 (8th Cir. 1997).  "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Webb v. Lawrence County,* 144 F.3d 1131, 1134 (8th Cir. 1998) (citations omitted).  "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials of allegations in the pleadings; rather, the non-movant must set forth specific facts showing that there is a genuine issue for trial." *Id*. at 1135 (citations omitted). Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." *Id*.

### A.    Conditions of Confinement Claim

#### 1.    Motion for Summary Judgment

Defendants state they are entitled to judgment as a matter of law on this claim because Plaintiff cannot show that cell conditions result in the denial of the minimal civilized measure of life's necessities, or that Defendants have acted deliberately indifferent to an excessive risk of harm to Plaintiff, citing *Williams v. Delo*, 49 F.3d 442, 445 (8th Cir. 1995).   Defendants set forth the following undisputed facts in support of their argument:

      a. In response to Plaintiff's complaints that the flushing of another toilet caused the water in his toilet in 5 Barracks to "move around," maintenance came to his cell in July 2008 and poured a substance into the drains, which resulted in an odor for four to five hours. (Doc. No. 75-1 at 40-41).

      b. While housed in 4 Barracks, Plaintiff observed the floor drains emit wastewater which formed puddles approximately ten feet in diameter. In response, maintenance came to clean up the area and used chemicals to clean and sanitize the area. (Doc. No. 75-1 at 61-65).

      c. Plaintiff submitted a grievance in October 2009, complaining of back flushing in his commode and a sewer gas smell in 8 Barracks. (Doc. No. 75-4). In response, Warden White sent an email to Mr. Murphy, asking him to review the matter. (*Id*. at 5). Murphy then responded that Plaintiff's toilet flushed without problems, and he observed that when a neighboring cell toilet was flushed, it caused a "gurgle" in Plaintiff's toilet. (*Id*.). Murphy also attached a memo dated November 7, 2008, showing his response to an earlier, similar complaint from Plaintiff. (*Id*. at 4). According to that response, a trap exists under each floor drain which continuously holds water to prevent sewer gas from backing up and out of the drain, and this design follows the state plumbing code. (*Id.* at 2-3).

      d. Plaintiff complained in April or May 2010, while in 3 Barracks, that brown water overflowed out of his commode as a result of constant flushing by inmates in cells above him. (Doc. No. 75-1 at 65-67). Officials responded that the incident occurred when inmates housed above him stuck items down their toilets and kept flushing, and officials allowed Plaintiff to exit his cell when this occurred. (*Id*.) After the incident, someone cleaned Plaintiff's cell, and Plaintiff cleaned it again thereafter. (*Id*. at 67).

      e. In May 2010 in 4 Barracks, Plaintiff complained that a clean-out valve in front of his cell emitted sewer gas. (Doc. No. 75-1 at 50). Plaintiff was permitted to prepare a soapy mixture to pour into the valve to abate the odor. (*Id.* at 50-53). Mr. Murphy states in his Affidavit that clean-out valves located in the floor of the barracks enable staff to clean items out of the plumbing system and are not sources of sewer gas. (Doc. No. 75-5 at 1).

      f. Plaintiff submitted two grievances complaining about the plumbing on May 4, 2010. (Doc. Nos. 75-6, 75-7). Corporal Davis responded to a maintenance request concerning the grievances on May 17, 2010, inspected Plaintiff's toilet in 3 Barracks, and noted that the toilet flushed fine. (Doc. No. 75-6 at 4-5). Mr. Murphy responded to Plaintiff's grievance by noting that the complaint was investigated by Davis and no issue was found. (*Id.* at 2).

      g. After Plaintiff filed the instant Complaint, ADC Construction/Maintenance Co-Coordinator Lynn Roberts inspected cell 1 in 4 Barracks where Plaintiff resided from May 2010 to October 2010. (Doc. No. 75-8). Roberts is a master plumber and observed no flushing problems and no problems with solid object transfer from one cell to another. (*Id.*) He also inspected the plumbing piping and found it is installed pursuant to plans and specifications as designed by the architect and inspected by the state plumbing inspector. (*Id.*) He also noted that the floor portal outside Plaintiff's cell is a clean-out portal which is sealed. (*Id.*; *see also* Doc. No. 75-9, a video of the inspection).

 Based on the above information, Defendants argue that Plaintiff is unable to support a claim of deliberate indifference against them. In addition, they argue Plaintiff fails to show he suffered serious medical needs which Defendants deliberately disregarded. Defendants note Plaintiff admits he received medical treatment for his medical problems, but complains he did not receive the type of preventative treatment to prevent his conditions from deteriorating further. (Doc. No. 2 at 6).

Defendants state a disagreement over the type of medical treatment received does not state a constitutional claim, citing *Smith v. Marcantonio*, 910 F.2d 500, 502 (8th Cir. 1990).

Finally, Defendants state that Plaintiff's allegations against former Warden White, Warden Straughn, and Assistant Warden Outlaw are based on their supervisory positions only, and Plaintiff can not show personal involvement or that their corrective inaction constituted deliberate indifference, citing *Choate v. Lockhart*, 7 F.3d 1370, 1376 (8th Cir. 1993).

### 2. Plaintiff's Response

Plaintiff does not dispute Defendants' claims concerning the efforts they made to respond to his Complaints. Rather, he maintains the plumbing system at MSU is defective, causing sewage to bubble up into other cells, and that Defendants deliberately refuse to "take on a retrofitting project of the prison's toilets." (Doc. No. 79 at 2). Plaintiff presents verified complaints of two other prisoners who complained about the back-flushing and sewage issues, and a grievance filed by inmate Barry Aaron, a former inmate maintenance worker. (Doc. No. 40 at 7-16). In the grievance, inmate Aaron complains about the emission of sewer gas from the floor drains. (*Id.* at 16). In response, Mr. Murphy advised his staff to secure the drain caps and install security screws to keep people from removing the caps. (*Id.* at 15). Plaintiff states in his Response (Doc. No. 79) to the Motion that Defendants' methods of responding to these issues are inadequate and that their efforts do not foreclose a finding of deliberate indifference when they do not respond reasonably to the risk of harm. Plaintiff refers to a grievance response in which Corporal Davis wrote, "checked toilet and toilet is flushing...moved a little." (Doc. No. 76-6 at 5). Plaintiff states this confirms his claim that when a toilet is flushed in the adjacent cell it causes water to move in his toilet. Plaintiff maintains he continues to suffer a serious medical need to avoid contact with hazardous waste and infectious germs, which could be resolved by his transfer to another unit.

### 3. Analysis

Although "[t]he Constitution does not mandate comfortable prisons," humane conditions of confinement include "adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). To support an Eighth Amendment violation, Plaintiff must prove the existence of objectively harsh conditions of confinement, with a subjectively culpable state of mind by prison officials in condoning or creating the conditions. *Choate v. Lockhart*, 7 F.3d 1370, 1373 (8th Cir. 1993). The "defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the 'minimal civilized measure of life's necessities.'. . . The defendant's conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner." *Revels v. Vincenz,* 382 F.3d 870, 875 (8th Cir. 2004) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 342 (1981) and *Estelle v. Gamble*, 429 U.S. 97, 104 (1977)). "To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interest or safety...." *Wilson v. Seiter*, 501 U.S. 294, 298-9 (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). Furthermore, "discomfort compelled by conditions of confinement, without more, does not violate the amendment." *Smith v. Coughlin*, 748 F.2d 783, 787 (2nd Cir. 1984) (quoting *Jackson v. Meachum*, 699 F.2d 578, 581 (1st Cir. 1983)).

In this particular case, although the parties disagree over the fact and extent of the plumbing problem, there is no dispute that Defendants consistently responded to Plaintiff's complaints, checked the plumbing in his and other cells, and made repairs when needed. Furthermore, Plaintiff's allegations that he smells sewer gas and that his toilet bubbles when others are flushed, do not support a finding of inhumane conditions of confinement. While this Court has no doubt these plumbing issues are uncomfortable for Plaintiff, they do not rise to the level of unconstitutionally

inhumane conditions, such as persistent overflowing toilets with raw sewage. *See McCord v. Maggio*, 927 F.2d 844, 847 (5th Cir. 1991).

Furthermore, although Plaintiff alleges a serious medical need aggravated by his cell conditions, he does not provide any support for such; neither does he provide any evidence that Defendants deprived him of needed medical care and treatment. Plaintiff admits in his Complaint that "I have received some medical treatment for my injuries. I have not however received the type of preventative medical treatment, which would prevent my medical conditions and mental health from deteriorating further and also such treatment as would restore me to full health." (Doc. No. 2 at 6). Plaintiff presents no medical records or sick call requests to show his condition has worsened, and no evidence to show his conditions of confinement are the cause of his medical conditions. In addition, he does not indicate what type of treatment he seeks. Therefore, Plaintiff does not support a finding of deliberate indifference to his serious medical needs by Defendants, and the Court finds Defendants' Motion should be granted with respect to his Eighth Amendment claim against Defendants.

### B. Retaliation

#### 1. Defendants' Motion

Plaintiff alleges Warden White retaliated against him by placing him in administrative segregation in response to Plaintiff's threatening language in a grievance. Plaintiff filed Grievance No. MX-09-678 in response to the disappearance of legal work from his cell on March 13, 2009. (Doc. No. 75-2). In this grievance, Plaintiff states, "If this matter is not properly investigated and my legal document is not returned to me within the next several days, we will have a problem on our hands because if you force me to control other people in this area officer or inmate you wont like my methods." *Id*. In response to this grievance, the Unit Classification Committee (chaired by

Warden White) reassigned Plaintiff to administrative segregation where he remained until his release on April 10, 2010. (Doc. No. 75-3 at 3-6).

Defendants state they are entitled to judgment as a matter of law on this allegation because an inmate does not retain all rights and privileges while incarcerated, and using a grievance to issue a threat against others should not be considered a protected First Amendment right. In addition, Defendants note that a violation of prison rules is sufficient to find that retaliation was not the motivation for his transfer, citing *Kind v. Frank*, 329 F.3d 979, 981 (8th Cir. 2003).

### 2.     **Plaintiff's Response**

Plaintiff states Defendants unlawfully transferred him to administrative segregation without charging him with or convicting him of a disciplinary violation. (Doc. No. 82). He failed to receive the same benefit of practices and procedures provided to inmates charged with disciplinary violations, and his placement in administrative segregation because of his statements in the grievance amounted to unlawful punishment.

### 3.     **Analysis**

It is clear that "otherwise proper acts are actionable under § 1983 if done in retaliation for filing a grievance pursuant to established prison procedures." *Orebaugh v. Caspari*, 910 F.2d 526, 528 (8th Cir. 1990). However, Plaintiff cannot state a retaliation claim when "the alleged retaliation arose from discipline imparted for acts that a prisoner was not entitled to perform." *Id*. An inmate failed to state a claim for retaliation after being disciplined for filing a grievance that included abusive and insulting language in *Cowans v. Warren*, 150 F.3d 910 (8th Cir. 1998). In that case, the court cited to *Orebaugh* and held no retaliation claim can be stated when an inmate violates an actual prison rule, even when the conduct which formed the basis for the alleged retaliatory action related to the original grievance. *Id.* at 911. The Court further noted that by using abusive and insulting

9

language in the grievance, Plaintiff used language which was not necessary to advance the purpose of the underlying grievance. *Id*.

This case is similar to *Cowens*. Plaintiff does not dispute that he included in his grievance the language which Defendants deemed threatening. It is also clear that such language was not essential to Plaintiff's grievance, which was based on the disappearance of his property from his cell and his belief that Defendants were not acting to resolve the issue. Plaintiff claims this situation is different, however, because Defendants never actually charged him with a disciplinary violation when assigning him to administrative segregation.

The transfer of an inmate to segregation does not violate his constitutional rights unless he can show he is deprived of rights which result in an "atypical and significant hardship." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The United States Court of Appeals has held that administrative and disciplinary segregation are not considered atypical and significant hardships. *See Portley-El v. Brill*, 288 F.3d 1063, 1065 (8th Cir. 2002); *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997); and *Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996). Plaintiff's plumbing complaints are not limited to his confinement in an administrative segregation cell, and he does not allege any other particular conditions of confinement while in administrative segregation which would be considered atypical and significant. Furthermore, Defendants provided Plaintiff with a probable cause hearing shortly after he was transferred to segregation, and Plaintiff does not allege he was denied periodic reviews of his classification prior to his release in April 2010 (Doc. No. 75-3). Finally, placement in administrative segregation for a period of one year does not in and of itself support a finding of atypical and significant hardship. *Rahman X v. Morgan*, 300 F.3d 970, 974 (8th Cir. 2002).

### III. CONCLUSION

IT IS, THEREFORE, RECOMMENDED that:

1. Defendants' Motion for Summary Judgment (Doc. No. 75) be GRANTED;

2. Plaintiff's Complaint against Defendants be DISMISSED with prejudice.

3. All pending motions are DENIED as moot.

DATED this 8th day of August, 2011.

                                               _____
                                               JOE J. VOLPE
                                               UNITED STATES MAGISTRATE JUDGE